LYONS v. FIRST NATIONAL BANK OF PARAGOULD.

Opinion delivered November 27, 1911.

1.  INFANTS—ESTOPPEL—DECLARATIONS AGAINST INTEREST.—While a minor can not by misrepresentations estop himself from asserting title to his own property, his declarations that he does not own certain property are competent evidence against him when the title to the property is in question.    (Page 374.)

2.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS. —A chancellor's findings of fact will not be disturbed on appeal unless they are clearly against the preponderance of the evidence. (Page 375.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland*, Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was instituted in the chancery court by the First National Bank of Paragould, Arkansas, a corporation, against Fannie Lyons, Max Lyons, Ike Lyons, Lyons Mercantile Company, a corporation, and People's Building & Loan Association of Fort Smith, Arkansas, a corporation.

The complaint alleges, in substance, that on the 10th day of April, 1907, the defendants Fannie Lyons and the Lyons Mercantile Company executed to the plaintiff a promissory note for $800, and that the defendant Fannie Lyons pledged as security for said sum 40 shares of stock owned by her in the People's Building & Loan Association of Fort Smith, Arkansas.

The complaint further alleges that the defendant Ike Lyons now claims some interest in said forty shares of stock in said People's Building & Loan Association.

The prayer of the complaint is for judgment for the amount alleged to be due plaintiff; and that said forty shares of stock be decreed to be the property of the defendant Fannie Lyons, and plaintiff have a lien on same for the payment of its judgment.

The defendant Ike Lyons, by his guardian, alleged that he was a minor, and that said 40 shares of stock in the People's Building & Loan Association belonged to him; that it had never been the property of the defendant Fannie Lyons, and that she had no authority to pledge it as security for the note sued on.

This suit was commenced September 24, 1908, and was decided by the chancellor on July 8, 1910.

Max Lyons and Fannie Lyons are husband and wife, and Ike Lyons is their son. He became of legal age in October, 1909. The Lyons family resided at Hot Springs, Arkansas, when their depositions were taken in October, 1909. They formerly lived at Van Buren, Arkansas, where Max Lyons was engaged in the mercantile business. He failed in business, and shortly afterwards Fannie Lyons commenced business, and her husband, Max Lyons, managed it for her. Fannie Lyons failed in business in 1904, and was duly adjudged a bankrupt. Her stock of goods was sold and purchased in the name of Ike Lyons, who was then 15 or 16 years old. In regard to the purchase the following receipt signed by the trustee in bankruptcy is filed in evidence:

"$810.25.

"Received of Max Lyons as agent for Isaac A. Lyons the sum of four hundred ten & 25-100 dollars in cash and note signed Max Lyons and S. A. Pernot for ($400.00) four hundred dollars being in full payment for Fannie Lyons's stock of merchandise and fixtures, this day sold in bankruptcy."

The business was then opened up and run in the name of Ike Lyons, Max Lyons continuing it. After a few months the stock of goods was shipped to Paragould, Ark., and business was then resumed in the name of Ike Lyons, Max Lyons continuing to manage it as before. In a short time, a corporation, the Lyons Mercantile Company, was organized, and took over the business and stock of goods. Max Lyons was president, Fannie Lyons vice-president and Ike Lyons was secretary and treasurer. Max Lyons and Ike Lyons were both authorized to sign checks for the corporation. The capital of the corporation was represented by the stock of goods taken over, which was valued at $4,000. One share of stock was issued to Max Lyons, five shares to Fannie Lyons and the remainder to Ike Lyons, the principal part of the stock being issued in his name.

In 1903 Fannie Lyons borrowed $300 from a bank at Van Buren and gave forty shares of stock in the People's Building & Loan Association of Fort Smith as collateral security for the loan. The certificate signed by her reads as follows:

"Assigned to Citizens' Bank, V. B., No. 460. Fort Smith, Ark., September 1, 1903.

"For valuable consideration received, I do hereby transfer, assign and set over unto Merchants' Bank. Satisfied all my right, title, interest and claim in and to 40 shares of the capital stock of the People's Building & Loan Association of Fort Smith, Arkansas, standing at the present time in Mrs. Fannie Lyons's name on the books of the Association, and numbered 460 and belonging to Series No.

"Witness my signature:

"Mrs. Fanny Lyons.

"Transfer fee 50 cents."

There was another certificate of assignment of the stock, dated December 7, 1908, and it is signed Fannie Lyons for Ike Lyons, and the body of it recites that the stock stand in the name of Fannie Lyons for Ike Lyons. As soon as this was discovered by the plaintiff bank, it began a correspondence with the building & loan association which resulted in this suit.

This $300 note was taken up by the plaintiff bank on October 14, 1905, and Fannie Lyons gave to it a new note with the building and loan stock as collateral security.

The Lyons Mercantile Company became indebted to the plaintiff bank, and on the 17th of April, 1907, the note sued on was executed, and the individual note of Fanny Lyons was delivered to her. The note sued on was for the $300 due the plaintiff by Fannie Lyons and for $500 due it by the Lyons Mercantile Company.

A. Bertig testified in substance as follows:

"I am the president of the plaintiff bank. I know all of the defendants. The defendant Lyons Mercantile Company was a corporation. The note sued on was executed to plaintiff bank on April 10, 1907, by Fannie Lyons and the Lyons Mercantile Company. I am familiar with the circumstances under which the note was given to the bank. Mr. and Mrs. Lyons came to me to help them redeem this building and loan stock which Mrs. Lyons had put up as collateral security in the bank

of Van Buren.   I asked who owned the stock, and they said it belonged to Mrs. Fannie Lyons.   I promised to help them out, and told them to write the bank at Van Buren to send the stock to plaintiff with draft attached, and agreed to pay the draft. They gave a note for $300, with the stock as collateral security. Later they told me they needed more money in their business, and said the stock was worth more money, and we let them have additional money on the stock.   Before this stock was transferred to our bank, Ike Lyons told me that he did not have anything, and the stock belonged to his mother.   I knew he was a minor.   They incorporated their business at my suggestion. When I learned that they were doing business in the name of Ike Lyons, a minor, I told them they could not get credit, and advised them to incorporate, and they followed my advice."

Max, Fannie and Ike Lyons all testified that the 40 shares of building and loan stock were subscribed by Fannie Lyons for Ike Lyons, and were taken out that way because Ike Lyons was a minor.   They say that the dues were $6 per month, and that they were paid by the earnings of Ike Lyons; that the payments were always sent in by Fannie Lyons for Ike Lyons or by Ike Lyons himself.   They say that Ike has always lived at home except when away at school or on business; and that he at first earned the monthly dues on the stock by work after school hours; that he was manumitted when he was 12 or 13 years old, and has since earned his living and sufficient more to pay the monthly dues in the building and loan association; that in 1904 he worked at the World's Fair at St. Louis, selling Official Maps and Guides for a commission of 20 per cent., and in that earned about $1,000 over and above his expenses while there; that in the fall of 1904 he was called home to buy in the stock of merchandise when his mother failed, and paid for it with the money he earned at the fair, buying the goods at 25 cents on the dollar; that when the Lyons Mercantile Company was organized Ike Lyons was the bookkeeper, and received a salary of $50 per month.   Max Lyons admits that he failed in business, and that the business was resumed in his wife's name because he could not do business in his own name.   He does not state how long the business was conducted in his wife's name before she failed, but thinks it was commenced in her name

about five years before they left Van Buren, and it appears they left there in the latter part of 1904.   All of them deny that they told Bertig that the stock in the building and loan association belonged to Fannie Lyons.

The books of the building and loan association show that when the stock was subscribed for it was placed on the books of the company in the name of Fannie Lyons for Ike Lyons, and has stood that way ever since.   The secretary of the company says that the monthly dues have been sent in by Fannie Lyons, and sometimes the remittances were signed Fannie Lyons for Ike Lyons.   The evidence does not show to whom the pass book was delivered, but it may be inferred it was delivered to Fannie Lyons; for the testimony shows that she negotiated the transaction, and Ike Lyons was only 12 years of age at that time.

Evidence was introduced by the plaintiff tending to show that the defendants, Lyons, after the Lyons Mercantile Company failed, tried to get the plaintiff bank to raise its claim to an amount above what was actually due, so it could be paid by the *pro rata* amount to be received by it in the distribution of the assets of the company, and that it was not until after the bank refused to do this that they claimed that Ike Lyons owned the building and loan stock    This is testified to by several of the officers of the bank, and is denied by Max, Fannie and Ike Lyons.

Ike Lyons testifies that one of the officers of the bank wanted him to agree for the bank to so raise its accounts against the Lyons Mercantile Company, and that he refused to consent to it.

Other evidence will be stated or referred to in the opinion.

The chancellor found that the 40 shares of stock in the building & loan association belonged to Fannie Lyons, and decreed that plaintiff had a lien on it for the satisfaction of the note sued on.   The case is here on appeal.

*Hill, Brizzolara & Fitzhugh,* for appellant.

When property is conveyed to one person for another, it is notice to the world that the beneficial ownership is in the one for whom it is being held, just as when a contract is made "for" another the courts will take judicial notice that the real

beneficiary is the person for whom the contract is made. 12 Mass. 237; 90 N. W. 262; 98 Mass. 901; 2 Devlin on Deeds, 738-A; 1 Beach on Trusts & Trustees, § 53. The fact that the minor's mother hypothecated the stock for her debt does not prevent the minor from asserting his ownership of the property. An infant's right to disaffirm his contract is absolute, and even an innocent purchaser for value without notice acquires no equity. 16 Am. & Eng. Enc. of L. 288; 51 Ark. 294. The rule of estoppel *in pais* does not apply to infants. 85 Ark. 556.

*M. P. Huddleston,* for appellee.

If it should be conceded that the court was wrong as to the ownership of the building and loan stock, and that it was in the minor, still the latter would be estopped to claim title thereto against the bank's attempt to enforce its lien, by his representations to Bertig that the stock belonged to his mother. The Tobin case, 85 Ark. 556, relied on by appellant, does not apply, because there is nothing in the transaction sounding in contract between the minor and the bank. An infant may disaffim his contract, but he will be held for his torts. Schouler's Dom. Rel. (3 ed.), 424; Bigelow on Estoppel, (3 ed.), 516.

*Ike A. Lyons, pro se.*

The evidence affirmatively shows that the building and loan stock is the property of Ike Lyons, and that no act of Fannie Lyons could affect his property. 14 Ala. 158; 82 Ill. 28; 42 N. C. 150; 71 S. W. 950.

HART, J., (after stating the facts). It is the contention of counsel for the defendants that the 40 shares of stock in the building & loan association was subscribed by Mrs. Fannie Lyons for Ike Lyons, and the stock entered in that manner on the books of the company because Ike Lyons was a minor. They claim that Ike Lyons has paid the dues of $6 per month from the time the stock was subscribed on December 20, 1900, until the date of its maturity, January 10, 1910, its value at date of maturity being $1,043.34 Hence they insist that Fannie Lyons holds the stock as trustee for Ike Lyons.

It will be remembered that Max, Fannie and Ike Lyons all testified to this effect, and that the entry on the books of the building & loan association was Fannie Lyons for Ike

Lyons. Of course, this evidence tends to show that Fannie Lyons held the stock as trustee for Ike Lyons, but it is by no means conclusive evidence of a declaration of trust on the part of Fannie Lyons in favor of Ike Lyons.

A. Bertig flatly contradicted their testimony that the stock belonged to Ike Lyons. He says that they all told him that Fannie Lyons was the owner of the stock. While it is true, as contended by counsel for defendants, that this court has held that a minor can not by misrepresentations estop himself from asserting title to his own property, still his declarations that he does not own certain property is competent evidence against him when the title to the property is in question. His declaration that he does not own property is a declaration of an existing fact, and is not admitted against him by way of estoppel, but as evidence of an independent fact of which he has knowledge and can testify. Being a declaration against his interest, it is admitted as independent testimony, where the question of ownership is at issue. The testimony of Mrs. Fannie Lyons that she did not own the stock is contradicted by the assignment made by her when she first procured the loan of the $300 from the Van Buren bank. There she asserted ownership in herself, and certainly could not have secured the loan on the faith of it as collateral if the bank had not believed she was the owner of it.

It is not claimed that either Max or Fannie Lyons paid the dues for Ike Lyons, and the stock was a gift to him; but it is claimed that Ike Lyons has paid all the dues on the stock from the beginning. It is true that Max, Fannie and Ike Lyons all testify that he made his payments from his earnings; but they content themselves with this bald statement. Ike Lyons was only 12 years old when the stock was subscribed, yet they say he paid $6.00 per month and the cost of his living from that time forward by odd jobs that he did after school. They admit that he had no regular employment at that time, and their statements that he paid the dues out of his earnings by doing odd jobs after school are too improbable to be accepted as true, in the face of the other circumstances in the case. Then, too, it seems incredible that he earned $1,000 above his expenses while selling Official Maps and Guides at the World's Fair in the space of seven months. It will be noted that he was em-

ployed with other boys in this work, and received a commission of 20 per cent. on sales made by him. If that was true, the net profits on his sales of these maps and guides must have amounted to between $5,000 and $6,000. It is no doubt true that he earned some money there, but it is not probable that he earned the amount he testified he earned. It will also be noted that when Max Lyons failed in business, his wife was brought forward, and business was commenced in her name. Max Lyons admits that this was done because he could not do business in his own name. When his wife failed, his minor son was brought home to bid in the stock of goods at bankrupt sale.

Four hundred dollars were paid in cash, and Max Lyons and C. P. Pernot made a note for the deferred payment. It is not likely that Pernot would have gone on the note of a 15 or 16-year-old boy to buy out a mercantile business. Ike Lyons admits that he only brought $400 back with him, and says that he left the rest with his uncle in St. Louis. It will also be observed that Max Lyons continued to manage the business during all this time, and his was the guiding hand, no matter whether the business was run in his own name or in that of his wife or minor son, or the Lyons Mercantile Company.

It might be inferred from these facts and circumstances that Fannie Lyons did not, and never intended to, declare a trust in favor of Ike Lyons in the building and loan stock, and the taking out of the stock in the name of Fannie Lyons for Ike Lyons was colorable merely. This view is strengthened by the fact that Mrs. Fannie Lyons negotiated the whole transaction, attended to the payment of dues, frequently sending the payments in her own name, and by inference has kept control of the pass book, and has at all times, until after the failure of the Lyons Mercantile Company, exercised dominion and control over the stock, using it to procure loans for herself and asserting title thereto. The chancellor found that Fannie Lyons was the owner of the stock, and it is the settled law of this State that the finding of fact made by a chancellor will not be disturbed on appeal unless it is against the clear preponderance of the evidence.

After considering the testimony in all its bearings and in the light of the attendant circumstances, we can not say that

the finding of the chancellor is against a clear preponderance of the evidence.

The decree will therefore be affirmed.